```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
Raymond Barbato,

               Plaintiff,               09-CV-6530T

              v.                  **DECISION**
                                              **and ORDER**

Michael J. Astrue,
Commissioner of Social Security

               Defendant.
_____

## **Introduction**

Plaintiff Raymond Barbato ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for disability insurance benefits ("DIB"). Specifically, Plaintiff alleges that the decision of Administrative Law Judge Brian Kane ("ALJ") was erroneous and not supported by substantial evidence in the record.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on the grounds that the ALJ's decision was not supported by substantial evidence. The Commissioner opposes the Plaintiff's motion, and cross-moves for judgment on the pleadings. For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law, and therefore, I grant the Commissioner's motion for judgment on the pleadings.

## **Background**

On August 15, 2007, Plaintiff filed an application for DIB, alleging that he became disabled on January 3, 2007, due to a back

injury, asthma, and foot disorder. (Tr. 109-13). Plaintiff's claim was initially denied by the Social Security Administration on February 13, 2008. (Tr. 68-71). On May 8, 2009, ALJ Brian Kane held an administrative hearing at which Plaintiff appeared with his attorney Christopher Mesh. (Tr. 24-66). The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act on June 2, 2009. (Tr. 10-23). The Appeals Council denied Plaintiff's request for review on August 28, 2009. (Tr. 1-3). On October 20, 2009, Plaintiff timely filed this action. (Plaintiff's Complaint).

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record**

The ALJ in his decision found that the Plaintiff was not disabled within the meaning of the Act from the alleged onset date of January 3, 2007 through June 2, 2009, the date of his decision (13-23). In doing so, the ALJ followed the Social Security Administration's five-step sequential analysis. See 20 C.F.R. § 404.1520.[1]

---

[1] Five step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so claimant will be considered disabled without considering vocational factors (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines wther claimant could perform other work. See id.

3

Under step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 3, 2007. (Tr. 15). At steps two and three, the ALJ concluded that Plaintiff's asthma, lumbar spine disorder, and foot disorder were severe within the meaning of the Social Security Regulations, but not severe enough to meet or equal singly or in combination, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 16). The ALJ found that Plaintiff was incapable of performing his past relevant work as an assembler of small products, oven unloader or janitor. (Tr. 21). Further, Plaintiff had additional limitations, which eroded his ability to perform the full range of activities at the sedentary work level, including limitations on his exposure to pulmonary irritants such as dust, odors and fumes. (Tr. 16). Plaintiff was also required to switch positions every 15 minutes. Id. Therefore, in the fifth step, the ALJ considered Plaintiff's age, education, work experience, RFC, and a vocational expert's ("VE") testimony regarding Plaintiff's additional limitations. (Tr. 21-22). He determined that Plaintiff was able to perform a significant number of jobs in the economy, such as telephone quotation clerk and charge account clerk. Id.

Based on the entire record, including medical evidence, the ALJ properly found that Plaintiff could perform sedentary work with some limitations. Id. Therefore, I find that there is substantial

4

evidence in the record to support the ALJ's finding that Plaintiff was not disabled within the meaning of the Act.

## **A. Medical evidence in the record supports the ALJ's determination that Plaintiff was not disabled**

Plaintiff injured his lower back on December 15, 2005. (Tr. 17, 125, 213). After the accident, Plaintiff's treating physician Dr. Dobson assessed Plaintiff with sciatic scoliosis with a disc protrusion at the L5-S1 level. (Tr. 307). In December 2006, Plaintiff re-injured his lower back while trying to lift a heavy motorcycle part as required by his job as an assembly line worker at Delphi Automotive. (Tr. 18, 35-36). Dr. Dobson assessed Plaintiff with a new injury at the L4-L5 level. (Tr. 296).

On February 9, 2007, chiropractor Dr. Gary Kuhn performed a Worker's Compensation Board independent medical examination and found that Plaintiff had lumbar displacement and sciatic neuralgia, and would be able to perform light duty work. (Tr. 231). On June 6, 2007, State Independent Examiner Dr. Richard Dellaporta diagnosed left lumbar radiculopathy due to L5-S1 disc protrusion. (Tr. 225). He opined that Plaintiff could perform work that did not require repetitive twisting or bending, nor lifting more than 20 pounds. Id. On July 27, 2007, Orthopedic Surgeon Dr. Peter Capicotto diagnosed Plaintiff with severe back and leg pain, positive tension signs, and no significant motor loss. (Tr. 194).

In 2007, Plaintiff had an asthmatic reaction to solvents while at work. (Tr. 18). In January 2007, Allergist Dr. Bruce Corsello attributed Plaintiff's breathing impairments to his exposure to

5

fumes at work. (Tr. 255). Dr. Corsello prescribed medications and allergy injections. (Tr. 256-265). On October 18, 2007, Plaintiff reported improvement from the injections, but indicated that he had struggled with breathing symptoms in previous months. (Tr. 253). On January 31, 2008, Dr. Corsello stated that Plaintiff was doing fairly well on allergy injections and his current medications. (Tr. 358).

On September 20, 2007, Pulmonologist Dr. William S. Beckett diagnosed occupational asthma. (Tr. 198-200). Dr. Beckett opined that Plaintiff needed a clean work environment with ongoing medications in order to control his respiratory symptoms. (Tr. 200). The ALJ granted great weight to Dr. Beckett's report, and included the limitations he described in Plaintiff's RFC. (Tr. 21).

Plaintiff complained of "dropped arches." (Tr. 16). The ALJ noted that claimant's Podiatrist Dr. Louis Tallo had diagnosed bilateral posterior tibial tendinitis caused by prolonged standing and walking.(Tr. 361). He advised that Plaintiff wear ankle-foot orthotics, but Plaintiff failed to adhere to his recommendation. (Tr. 20).

On February 2, 2008, internal medicine consultive examiner, Dr. George Alexis Sirotenko found that Plaintiff had moderate limitations for lumbar spine forward flexion, extension, and rotation. (Tr. 319). He advised that Plaintiff avoid lifting, and respiratory triggers. Id. The AlJ reflected Dr. Sirotenko's findings in Plaintiff's RFC. (Tr. 21).

6

The ALJ concluded that Plaintiff's medical impairments were not severe enough to be disabling. (Tr. 16). He noted that Plaintiff's asthma did not result in chronic obstructive pulmonary disease, or attacks at the frequency to meet the criteria of Listing 3.03. Id. Further, The ALJ concluded that Plaintiff's diagnostic imaging did not reflect the spinal arachnoiditis, pseudoclaudication, or nerve root impingement required by Listing 1.04. Id. Further, Plaintiff's foot disorder did not result in an inability to ambulate as defined by Listing 1.008(2)(b). Id.

The ALJ determined that the totality of medical evidence failed to establish that Plaintiff was disabled, and included Plaintiff's medical limitations in his RFC assessment. (Tr. 20-21). I find that there was substantial evidence in the record to support the ALJ's determination that Plaintiff's condition was not disabling within the meaning of the Act during the relevant period.

**2. The ALJ correctly assigned no weight to the opinions of treating physicians Dr. Peter Capicotto and Dr. Dobson**

In July 2007, Dr. Dobson reported that "at the level of the lower back, the claimant has a marked partial disability, with the added impairment from his asthma, he has a total disability." (Tr. 18). On July 27, 2007, Dr. Capicotto reported "to his worker's compensation carrier: he is totally disabled." Id. The ALJ granted no weight to Dr. Capicotto and Dr. Dobson's opinions that Plaintiff was "totally disabled." (Tr. 20-21). Plaintiff argues that the ALJ erred in failing

to grant controlling weight to these treating physicians' opinions. (Plaintiff's Memorandum of Law "Pl. Mem" 8-11).

Social Security Regulations provide that a treating physician's opinion on the nature and severity of a claimant's symptoms is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). The factors that an ALJ must consider when a treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

The ALJ determined that Dr. Dobson's reports were both internally inconsistent, and contradictory to other medical evidence. (Tr. 21). The ALJ noted that Dr. Dobson's reports that Plaintiff was totally disabled were not substantiated by his treatment notes from the same time period that Plaintiff's back condition was improving. (Tr. 289-93). Further, in March and June 2007, Dr. Dobson opined that Plaintiff could tolerate the performance of light duty work (Tr. 282, 288). The Commissioner noted that Dr. Dobson's opinion that Plaintiff was disabled due to his asthma was in direct conflict with allergist

Dr. Corsello's opinion that Plaintiff's asthma was stable and that he was doing well on allergy injections and his current medications. (Tr. 358; Defendant's Memorandum of Law "Df. Mem" 18).

In order for a physician to be considering a treating source, a claimant must meet with the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. 404.1502. The ALJ noted that Dr. Capicotto saw Plaintiff only once, and did not establish an ongoing treatment relationship with him. (Tr. 20, 43).

The determination of whether a Plaintiff meets the statutory definition of disabled under the Act is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), § 416.927(e)(1). "A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d. Cir. 1999). This is particularly true when statements of disability are made in the context of Worker's Compensation Claim, as the Worker Compensation Board's standards differ from the Social Security Administration's. See Gray v. Chater, 903 F. Supp 293, 299-301 (N.D.N.Y. 1995); Rosado v. Shalala, 868 F. Supp 471, 473 (E.D.N.Y. 1994).

Dr. Capicotto's one-time examination was done in connection with Plaintiff's Workers' Compensation claim. (Tr. Therefore, the ALJ properly concluded that Dr. Dobson and Dr. Capicotto's statements that Plaintiff was "total disabled" were conclusions of law reserved to the Commissioner.

9

Plaintiff also argues that the ALJ erred in failing to re-contact both Dr. Dobson and Dr. Capicotto for clarification. (Pl. Mem 9). An ALJ is required to obtain additional evidence only if the ALJ cannot decide whether a claimant is disabled based on the existing evidence. 20 C.F.R. § 404.1527(c). "Where there are no obvious gaps in the administrative record and the ALJ already possesses a 'complete medical history,'" the AlJ is under no obligation to re-contact a physician. Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir. 1999). Here, the ALJ based his decision on the complete medical record, and was not required to re-contact Dr. Dobson or Dr. Capicotto for clarification.

The ALJ considered the consistency of the record, the length of the treatment relationships, and the basis for the physicians' statements that Plaintiff was disabled, and concluded that both Dr. Dobson and Dr. Capicotto's opinions were not controlling. (Tr. 20). I find the ALJ articulated "good reasons" for granting no weight to these treating sources opinions, and that there was substantial evidence in the record to support his assessment.

**B. The ALJ properly assessed Plaintiff's credibility**

Plaintiff alleged that it hurt him to be on his feet for extended periods of time and that he could not climb stairs or sit for longer than two hours. (Tr. 17). Plaintiff testified at the administrative hearing that his back pain prevented him from sitting or walking for longer than 15 minutes at a time, that he was no longer able to bend, and could only climb one flight of stairs at

10

a time. Id. Plaintiff stated that he suffered from two to three asthma attacks a day. Id. Plaintiff alleged that his asthma affected his ability to sleep and compromised his socialization, and that he would awaken from coughing fits. Id. The ALJ discounted some of the Plaintiff's subjective complaints of pain and disability because he found that Plaintiff was not entirely credible. Id.

An ALJ's credibility assessment "must be based on a two step analysis of pertinent evidence in the record." Borush v. Astrue, 2008 W.L. 4186510 *12 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1529, 416.929). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms" that are alleged by the claimant. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. See 20 C.F.R. § 404.1529(c), SSR 96-7p.

At the first step, the ALJ found that Plaintiff's medically determinable impairments could not be expected to cause Plaintiff's alleged symptoms. (Tr. 17). At the second step, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Id. If objective medical evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ

11

must assess the credibility of the claimant's subjective complaints by considering the record.[2]

Plaintiff stated that he walked, drove a car several times per week, used public transportation, attended church and bible study, shopped for food, read books, watched televison, emptied the garbage, performed light cooking, and socialized with friends. (Tr. 17). The ALJ determined that the ability to perform these daily activities, and the lack of corroborating medical evidence, failed to demonstrate a complete inability to work. Id,

Plaintiff argues that the ALJ should have considered Plaintiff's persistent efforts to obtain medical treatment for his ailments. (Pl. Mem 13-14). Plaintiff contends that the fact that he used numerous prescription medications despite their strong side effects should create a presumption of credibility. Id.

"A longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain." SSR 96-7p. Here, the ALJ found that Plaintiff had very limited treatments,

---

[2] The ALJ may consider claimant's subjective complaints in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

significant treatment gaps, and ignored his treating physicians' recommendations. (Tr. 20). He elected against surgery for his back impairment as Dr. Capicotto suggested, and did not wear foot orthotics as suggested by his podiatrist. (Tr. 20, 43, 316, 359, 195).

The ALJ must make a credibility assessment in light of all of the evidence in the record. See Rivera v.Schweiker, 717 F.2d at 724; Steilberger v. Sullivan, 738 F.Supp 716,743 (S.D.N.Y. 1990). I find that there was substantial evidence in both Plaintiff's medical records, and his testimony to support the ALJ's assessment that Plaintiff's allegations were not entirely credible.

**III. There is substantial evidence in the record to support the ALJ's determination that Plaintiff could perform sedentary work**

The ALJ found that Plaintiff had the RFC to perform sedentary work,[3] with limitations on his exposure to pulmonary irritants, and a requirement that Plaintiff alternate positions every 15 minutes. (Tr. 16). The ALJ determined that Plaintiff was no longer able to perform his past relevant work as an assembler of small products or an oven unloader. (Tr. 21).

Once a claimant has shown that he can no longer perform his past relevant work, the ALJ bears the burden of proving that the claimant can engage in other substantial gainful activity. 20 C.F.R.

---

[3]Sedentary work involves lifting no more than 10 pounds at a time, occassionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

§§ 494.1520(g), 404.1560(c). See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). In the ordinary case, the ALJ satisfies this burden by considering the claimant's age, education, and work experience in conjunction with the applicable Medical-Vocational Guidelines ("Grid Rule"). 20 C.F.R. Pt. 404, Subpt. P, App. 2. Whether or not a claimant satisfied the criteria of the Grid Rule, directs a conclusion of "disabled" or "not disabled." 20 C.F.R. § 404.1569. See Heckler v. Campbell, 461 U.S. 458 (1983). In the instant case, the ALJ found that Plaintiff's ability to perform the requirements of sedentary work, as specified by Grid Rule 201.21, was impeded by Plaintiff's additional limitations. (Tr. 22).

In a case where both exertional and non-exertional limitations are present, the Grid Rules in Appendix 2 cannot provide the exclusive framework for making a disability determination. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(e)(2). See Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). Here, the ALJ did not directly rely on the criteria of Grid Rule 201.21, but used the rule as a framework in making his decision. (Tr. 21). See Medical Vocational Rule 202.21. The ALJ determined that Plaintiff, who was 46 years old at the time of his application for benefits, was a younger individual with at least a high school education and the ability to communicate in English. Id. The ALJ noted that under Grid Rule 202.21, the transferability of Plaintiff's job skill was not material to the determination of disability. Id, See SSR 82-41. The ALJ determined

that Rule 201.21 would direct a finding of "not disabled" if Plaintiff were able to perform the full range of sedentary work. (Tr. 22).

**A. The ALJ properly relied on a vocational expert's testimony to determine that there were jobs available for Plaintiff in the economy**

Once the ALJ has determined that the claimant is capable of substantial gainful activity other than past relevant work, the ALJ has the additional burden of showing the availability of suitable alternative employment in the national economy. Decker v. Harris, 647 F.2d 291, 297 (2d. Cir 1981). If the range of jobs is limited by a claimant's condition, the ALJ may not rely on the Grid Rules alone to make his determination. Bapp, 802 F.2d at 605. If necessary, the Commissioner may require testimony from a VE to determine whether jobs exist in the national economy, which a claimant with Plaintiff's limitations can perform. Id. The ALJ can properly rely on the VE's testimony in response to a hypothetical posed to him regarding the availability of jobs in the economy if the hypothetical is based on substantial evidence. See Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d. Cir 1983).

Here, the ALJ asked the VE whether jobs exist in the national economy for an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 22, 60-64). The VE found that Plaintiff could perform the work activities required of a telephone quotation clerk, #237.367-046 in the Dictionary of Occupational Titles ("DOT") with 408 jobs in the regional economy and 98,008 job in the national

15

economy, and charge account clerk # 205.367-014 with 180 jobs in the regional economy, and 40,027 jobs in the national economy. (Tr. 61). The ALJ noted that the VE's testimony was consistent with the information in the DOT. (Tr. 22). See SSR 00-4p[4].

Plaintiff argues that the ALJ failed to establish the existence of jobs in significant numbers. (Pl. Mem 15). The ALJ is required to show that work "exists in significant numbers in either the region where such an individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b). Here, the ALJ demonstrated that close to 150,000 jobs exist in the national economy which Plaintiff could perform. (Tr. 22, 61). The ALJ noted that the VE testified that the telephone quotation clerk and charge account clerk jobs were representative occupations, and that Plaintiff could perform other sedentary work. Id. Further, courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers. Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992). Courts have adopted a relatively low threshold number. Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993; Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions within the local economy were a significant number); Dumas 712 F.2d at 1553-54 (150 jobs regionally constituted significant numbers). Thus, the ALJ was able to conclude that Plaintiff was capable of performing a significant number of jobs in the economy.

---

[4]SSR 00-4p provides that the ALJ must obtain a reasonable explanation for conflicts between occupational evidence provided by VEs and information in the DOT.

16

Accordingly, I find that there is substantial evidence in the record to support the ALJ's determination that Plaintiff was capable of making an adjustment to other work that exists in significant numbers in the national economy, and that Plaintiff was not under disability from January 3, 2007 to June 2, 2009.

### CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                   s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                 United States District Judge
DATED: July 7, 2010
       Rochester, New York